UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **WEBSEED, INC., BRIGHTEON MEDIA, INC.,** *Plaintiffs* § § § § | |
| v. § § | No. 1:24-CV-00576-RP |
| **DEPARTMENT OF STATE, ET AL.,** *Defendants* § § § § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE ROBERT PITMAN
     UNITED STATES DISTRICT JUDGE

Before the Court are Defendants Google, LLC ("Google"), Meta Platforms, Inc. ("Meta"), and X Corp.'s (collectively, "Defendants") motions to transfer venue to the Northern District of California and all related briefing. Dkts. 37 (Google); 38 (Meta); 39 (X Corp.). After reviewing these filings and the relevant case law, the undersigned recommends that the District Judge grant the motions.

**I.     BACKGROUND**

Plaintiffs Webseed, Inc. and Brighteon Media, Inc. ("Plaintiffs") initiated this suit based on Defendants' alleged participation in a scheme by the United States Government to "silence [Plaintiffs'] competitive COVID-related speech." Dkt. 4, at 2. Plaintiffs claim that each Defendant censored Plaintiffs on social media through "shadow-bann[ing]" and "delist[ing]" their sites (Google), suspending their accounts (Google), removing their apps (Google), "block[ing]" their content distribution

1

(Facebook, owned by Meta), deleting their pages (Facebook), and "domain blocking" their sites (Facebook).[1] *Id.* at 6-7.

Defendants respond that in registering to use Defendants' platforms, Plaintiffs agreed to Defendants' terms of service ("TOS"). Dkts. 37, at 8-9; 38, at 9; 39, at 9. They argue that each of these TOS contained a forum-selection clause ("FSC") requiring Plaintiffs to bring this suit in the Northern District of California. Dkts. 37, at 8; 38, at 9; 39, at 10. Based on these FSCs, Defendants moved to transfer this case to the Northern District of California. Dkts. 37, at 18; 38, at 21[2]; 39, at 24. Plaintiffs oppose the motion, arguing broadly that the scope of this case extends "well beyond the social media services contemplated" by the various TOS and that the FSCs are not valid or enforceable. Dkt. 49, at 6-7.[3]

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In considering a § 1404(a) motion, district courts

---

[1] It is unclear from the complaint which allegations, if any, Plaintiffs make against X Corp. *See* Dkt. 4.

[2] Meta Platforms, Inc. requests that in the alternative, this Court sever and transfer the claims against it to the Northern District of California. Dkt. 38, at 15.

[3] The United States Departments of Defense, Homeland Security, and State ("United States") are also Defendants in this suit. The United States takes no position on whether transfer is warranted in this case. Dkt. 48, at 1. However, it asks that if this Court transfers any portion of this case to the Northern District of California, the Court should transfer the entire action on judicial-economy grounds. *Id.* The undersigned agrees that judicial economy would favor transfer of the entire case and accordingly recommends that the District Judge do so.

typically evaluate the convenience of transfer to the parties and other public-interest considerations. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62-63 (2013).

However, when the parties' contract contains a valid FSC, "the calculus changes." *Id.* at 63. Valid FSCs represent the parties' consent under section 1404(a) and so are presumptively enforceable because they "represent[] the parties' agreement as to the most proper forum." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988). They "[should be] given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart*, 487 U.S. at 33) (alteration in original). When a valid FSC is present, the plaintiff's choice of forum carries no weight. *Id.* Neither do the parties' private interests. *Id.* at 64. Additionally, the transferee forum will not carry the original venue's choice-of-law rules. *Id.*

In determining whether to transfer a case pursuant to an FSC, the Court first evaluates whether the FSC is mandatory or permissive.[4] *See PCL Civil Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073 (5th Cir. 2020); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766 (5th Cir. 2016); *see also Davis v. Meta Platforms, Inc.*, No. 4:23-cv-01001, 2023 WL 4670491, at *9 (E.D. Tex. July 20, 2023) (dividing the FSC analysis into three steps). An FSC is mandatory if it "'affirmatively requires that litigation arising from the contract be carried out in a given forum.'" *PCL*, 979 F.3d

---

[4] Some courts have asked whether an FSC is "valid" at the first step of the transfer analysis. *See, e.g.*, *Davis v. Meta Platforms, Inc.*, No. 4:23-cv-01001, 2023 WL 4670491, at *9 (E.D. Tex. July 20, 2023). However, the Fifth Circuit treats "validity" and "enforceability" as synonyms in the FSC context. *Matthews v. Tidewater, Inc.*, 108 F.4th 361, 368 n.4 (5th Cir. 2024). The undersigned therefore declines to address "validity" at this stage.

at 1073 (quoting *Weber*, 811 F.3d at 768). This step-one inquiry is governed by state law, which is determined based on the original forum's choice-of-law rules. *Davis*, 2023 WL 4670491, at *9 (citing *Weber*, 811 F.3d at 770).

Second, the Court asks whether the FSC is enforceable. *PCL*, 979 F.3d at 1074 (citing *Weber*, 811 F.3d at 766). In diversity cases—as here—federal law applies to determine the enforceability of an FSC. *Id.* There is a strong presumption in favor of enforcing mandatory FSCs. *Id.* (citing *Weber*, 811 F.3d at 773). This presumption is only overcome by a "clear showing" that the clause is unreasonable under the circumstances. *Weber*, 811 F.3d at 773. An FSC may be unreasonable under the circumstances if

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the [FSC] would contravene a strong public policy of the forum state.

*Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 248 (5th Cir. 2023) (citing *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997)). "Arguments going to the validity of the contract as a whole do not prevent enforcement of an FSC; instead, the party seeking to avoid enforcement must demonstrate that the FSC is invalid rather than merely claim the contract is invalid." *Weber*, 811 F.3d at 773.

Third, the Court decides whether extraordinary circumstances weigh against transfer. *Atl. Marine*, 571 U.S. at 62. In making this determination, the Court

4

considers public-interest factors including (1) "the administrative difficulties flowing from court congestion"; (2) "the local interest in having localized interests decided at home"; (3) "the familiarity of the forum with the law that will govern the case"; and (4) "the avoidance of unnecessary problems of conflict of laws." *Sobel on Behalf of SolarWinds Corp. v. Thompson*, No. 1:21-cv-272-RP, 2023 WL 4356066, at *7 n.6 (W.D. Tex. July 5, 2023) (citing *In re Volkswagen* AG, 371 F.3d 201, 203 (5th Cir. 2004)). A party acting in violation of the FSC bears the burden of showing that the public-interest factors "overwhelmingly disfavor" transfer. *Atl. Marine*, 571 U.S. at 67.

In sum, if the FSC is mandatory and enforceable, and if no extraordinary circumstances weigh against transfer, the court should transfer the case.

### III. DISCUSSION

**A. The FSCs**

Defendants base their motions to transfer on substantially similar FSCs. Beginning with Google, Plaintiffs allege that they maintained a merchant account through Google's Merchant Center, that they operated an app on Google Play, and that they used Google Search and Google News. Dkt. 4, at 6. Google attests that Google Merchant Center and Google Play both require users to create a Google account, which in turn requires users to agree to Google's TOS. Dkts. 37-15, at 2; 37-19, at 2. To create a Google account, use Google Merchant Center, or use Google Play,

users must agree to an FSC[5] specifying that California law will govern all disputes arising out of or relating to the terms—except California's choice-of-law provisions—and that all disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California. Dkts. 37-9, at 17; 37-16, at 4; 37-20, at 9.

Defendant Meta operates Facebook. Dkt. 38, at 7. Facebook has required all users to agree with its terms when registering an account since 2004, and the terms have included a California FSC since 2005. Dkt. 38-1, at 1, 3. While Facebook's FSC has "undergone minor revisions over the years," it generally states that "any claim, cause of action, or dispute between [Facebook and the user] that arises out of or relates to these Terms or [the user's] access or use of the Meta Products shall be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." Dkts. 38, at 8; 38-2, at 16. Facebook's TOS also provides that California law should govern except with regard to choice-of-law. Dkt. 38-2, at 16. Meta alleges that Plaintiffs, through their president Mike Adams, "own and operate several … brands whose content they promote on Facebook." Dkt. 38, at 8. Plaintiffs do not contest this. *See* Dkt. 49. Mike Adams, Plaintiffs' president, first registered for a Facebook account in 2008 and administered each of Plaintiffs' pages while they were active. Dkt. 38-1, at 3-4. At the time Adams registered for an account, he agreed to Facebook's terms; he also accepted any

---

[5] While Google's general TOS (to which users agree when creating a Google account), the Google Play TOS, and the Google Merchant Center TOS each differ slightly, they contain the same essential elements. *See* Dkts. 37-9, at 17; 37-16, at 4; 37-20, at 9.

6

updated terms through his continued use of the platform. *Id.* at 4. The 2008 terms to which Adams agreed contained a California FSC. *Id.*

X Corp. operates Twitter.[6] Dkt. 39, at 8. According to X Corp., Plaintiffs operate two Twitter accounts. Plaintiffs created @BrighteonTV in 2023 and agreed to Twitter's terms—which remain in effect as of the filing of Defendants' motions—at that time. Dkt. 39-1, at 5. Plaintiffs created @HealthRanger in 2008. *Id.* They agreed to X Corp.'s TOS in 2008 and have consented to the current terms by continuing to use Twitter.[7] *Id.* X Corp.'s current TOS contains an FSC providing that the laws of California—excluding its choice of law provisions—will govern and that "[a]ll disputes related to [the TOS] will be brought solely in the federal or state courts located in San Francisco County, California, United States." Dkt. 39-19, at 11.

**B. The FSCs are Mandatory**

The interpretation of FSCs—i.e., the determination of whether they are mandatory—is a matter of state law. *Davis*, 2023 WL 4670491, at *10 (citing *Weber*, 811 F.3d at 770). Which state's laws apply depends on the original forum's choice-of-law rules. *Id.* at *9; *see also Moates v. Facebook Inc.*, No. 4:20-cv-896-ALM-KPJ, 2021 WL 3013371, at *4 (E.D. Tex. May 14, 2021). Accordingly, the undersigned begins with a choice-of-law analysis.

---

[6] Twitter was recently rebranded as "X." Dkt. 39-1, at 2 n.1. The undersigned refers to X as Twitter here.

[7] Plaintiffs used the @HealthRanger account "as recently as late September 2024." Dkt. 39-1, at 5.

7

A federal court sitting in diversity applies the choice-of-law rules of the forum state. *See Weber*, 811 F.3d at 771. Here, the forum state is Texas. Texas applies the "most significant relationship" test from the Second Restatement of Conflicts to decide choice-of-law issues. *See Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004); *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000); Restatement (Second) of Conflict of Laws §§ 6, 145 (Am. L. Inst. 1971). Under the most-significant-relationship test, contractual (here, TOS) choice-of-law provisions will apply to claims pertaining to that contract. *See Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004); *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 705 (5th Cir. 1999) ("In Texas, contractual choice-of-law provisions are ordinarily enforced[.]"). However, Texas courts will not enforce choice-of-law provisions if the law of the chosen state violates a fundamental public policy of Texas or the contract bears no reasonable relation to the chosen state. *See Exxon Corp. v. Burglin*, 4 F.3d 1294, 1298 n.5 (5th Cir. 1993) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990), *cert. denied*, 498 U.S. 1048 (1991)).

Each of the relevant TOS provide that California law governs this dispute. Dkt. 37-9, at 17; 37-16, at 4; 37-20, at 9; 38-2, at 16; 39-19, at 11. Therefore, unless California law violates Texas public policy or the TOS contracts bear no reasonable relation to California, this Court should apply California law. The undersigned finds that the contracts between Plaintiffs and Defendants bear a reasonable relation to California, since each Defendant is headquartered in California. Dkts. 37-15, at 1; 38-1, at 1; 39-1, at 6; *Moates*, 2021 WL 3013371, at *4 (citing *Marquis Software Sols.,*

8

*Inc. v. Robb*, No. 3:20-cv-372-B, 2020 WL 955901, at *4 (N.D. Tex. Feb 27, 2020)). Plaintiffs do not argue otherwise. *See* Dkt. 49. Neither do they argue that the law of California violates a fundamental public policy of Texas, and this Court finds no such violation. *Id*. To the contrary, "Texas's strong public policy favoring freedom of contract is firmly embedded in [Texas's] jurisprudence," and the parties' agreement as to California law reflects this freedom. *Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 471 (Tex. 2016). Accordingly, California law will guide the undersigned's interpretation of the FSCs.

Each of the FSCs is mandatory. Under California law, an FSC is mandatory if it "contains express language of exclusivity of jurisdiction" and "specif[ies] a mandatory location for litigation." *Olinick v. BMG Entm't*, 42 Cal. Rptr. 3d 268, 274 (Ct. App. 2006); *see also Korman v. Princess Cruise Lines, Ltd.*, 32 Cal. Rpt. 3d 668, 676 (Ct. App. 2019) ("'To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one.'") (quoting *N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995)).

Google's general TOS state that all disputes arising out of or relating to the terms "*will be resolved exclusively* in the federal or state courts of Santa Clara County, California, USA[.]" Dkt. 37-9, at 17 (emphasis added). The TOS for Google Merchant Center similarly provide that all claims arising out of or relating to the TOS "*will be litigated exclusively* in the federal or state courts of Santa Clara County, California, USA[.]" Dkt. 37-16, at 4 (emphasis added). Finally, the TOS for Google Play require users to agree to "submit to the *exclusive jurisdiction* of the federal or state courts

located within the county of Santa Clara, California to resolve any legal matter arising from or relating to" the TOS. Dkt. 37-20, at 9 (emphasis added). This language affirmatively requires that the dispute between Plaintiffs and Google be litigated in California, and under California law, these TOS make clear that the FSCs are mandatory. *Olinick*, 42 Cal. Rptr. 3d at 274 (finding that a FSC containing "express language of exclusivity of jurisdiction" was mandatory); *see Davis*, 2023 WL 4670491, at *10 (reaching the same result with a similar FSC).

Facebook's TOS provide that "any claim, cause of action, or dispute between [Meta and the user] that arises out of or relates to these Terms or [the user's] access or use of the Meta Products shall be *resolved exclusively in the U.S. District Court for the Northern District of California* or a state court located in San Mateo County." Dkt. 38-2, at 16 (emphasis added). As with Google's TOS, this clause is mandatory. *See Olinick*, 42 Cal. Rptr. 3d at 274.

Finally, X Corp.'s TOS state that "[a]ll disputes related to [the TOS] will be *brought solely in the federal or state courts located in San Francisco County, California*, United States." Dkt. 39-19, at 11 (emphasis added). As with Google and Facebook's TOS, this clause affirmatively requires that all disputes be resolved in California and is mandatory under California law. *See Olinick*, 42 Cal. Rptr. 3d at 274.

Plaintiffs argue that the FSCs do not warrant transfer because this case "has nothing to do with" Defendants' TOS. Dkt. 49, at 14. While presented as an argument against enforceability, Plaintiffs essentially ask this Court to find that they may bring

10

some claims against Defendants in non-California forums, and therefore that the FSCs are not mandatory. Plaintiffs contend that the "conspiratorial web between Government, Big Tech, and other foreign and domestic NGOs has absolutely nothing to do with the ordinary interactive computer services contemplated by [Defendants'] TOS[.]" *Id.* at 16. They state that this case is "really about" violations of Plaintiffs' constitutional rights and other laws. *Id.* at 16-17.

Defendants generally respond that because all of Plaintiffs' claims concern their use of Defendants' platforms, the parties' dispute is sufficiently related to the TOS. *See* Dkts. 50, at 12-13; 51, at 7-8; 52, at 5-6. The undersigned agrees. Under California law, a "broad" FSC is one that contains language encompassing "any claim arising from or related to [the] agreement." *See Howard v. Goldbloom*, 241 Cal. Rptr. 3d 743, 746 (Ct. App. 2018) (analyzing an arbitration clause); *Davis*, 2023 WL 4670491, at *11 (applying this definition of a "broad" clause in the forum-selection context). To fall within the scope of a "broad" clause, the dispute between the parties "need only touch matters covered by the contract containing the" forum-selection clause. *See Ramos v. Super. Ct.*, 239 Cal. Rptr. 3d 679, 689 (Ct. App. 2018) (cleaned up); *Davis*, 2023 WL 4670491, at *11 (applying the approach in *Ramos*).

Google's FSCs each encompass all disputes arising out of or relating to the TOS. Dkts. 37-9, at 17 (referring to "all disputes arising out of or relating to these terms"); 37-16, at 4 (referring to "all claims arising out of or relating to" the terms); 37-20, at 9 (referring to "[a]ll claims arising out of or relating to" the TOS or the user's relationship with Google under the TOS). This broad language applies to Plaintiffs'

claims against Google since, regardless of the claims' nature under the law, they spring from Plaintiffs' use of their Google accounts. *See Ramos*, 239 Cal. Rptr. 3d at 689; *Davis*, 2023 WL 4670491, at *11.

The same is true of the Meta and X Corp. FSCs, which state respectively that "any claim, cause of action, or dispute between us that arises out of or relates to these Terms" and "[a]ll disputes related to [the TOS]" will be litigated in California. Dkts. 38-2, at 16; 39-19, at 11. Because Plaintiffs' claims arise from their use of Facebook and Twitter accounts and Meta and X Corp.'s alleged interference with that use, this case falls within the scope of the TOS. And because this case falls within the scope of each Defendant's TOS, the FSCs are mandatory.

### C. The FSCs are Enforceable

Having concluded that the FSCs are mandatory, the undersigned evaluates whether they are enforceable. As explained above, federal courts sitting in diversity apply federal law to the question of FSC enforceability. *PCL*, 979 F.3d at 1074 (citing *Weber*, 811 F.3d at 766). There is a strong presumption in favor of enforcing mandatory FSCs, which is overcome only by a "clear showing" that the clause is unreasonable under the circumstances. *Weber*, 811 F.3d at 773. In determining whether an FSC is unreasonable under the circumstances, courts ask whether

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the [FSC] would contravene a strong public policy of the forum state.

12

*Noble House*, 67 F.3d at 248 (citing *Haynsworth*, 121 F.3d at 963).

Plaintiffs argue the FSCs are unenforceable because the TOS are "the product of overreach and fraud," transfer to the Northern District of California would deprive Plaintiffs of their day in court, "public policy cuts against transfer," and the TOS are "contracts of adhesion."[8] Dkt. 49, at 18-22. Because Plaintiffs direct these arguments to all of Defendants' TOS generally, the undersigned evaluates them in the same manner.

Plaintiffs argue that because the TOS themselves are the product of fraud and overreaching, the FSCs within them are unenforceable. Dkt. 49, at 21 ("Causes of action concerning fraud lacing the very services implicated by a services 'contract' … are not subject to a services contract's forum selection clause."). But "[f]raud and overreaching must be specific to a forum selection clause in order to invalidate it." *Haynsworth*, 121 F.3d at 963; *see Noble House*, 67 F.3d at 248 (requiring inquiry into whether *the incorporation of the FSC* into the agreement was the product of fraud or overreaching) (emphasis added). Allegations that the contracts as a whole are the product of fraud or overreaching are insufficient. *Haynsworth*, 121 F.3d at 963. Because Plaintiffs make no argument that the inclusion of the FSCs themselves was the product of fraud or overreaching, the FSCs are not unenforceable on these grounds.

---

[8] Plaintiffs offer no argument that the "fundamental unfairness of the chosen law will deprive [them] of a remedy." *See* Dkt. 49; *Noble House*, 67 F.3d at 248. Therefore, the undersigned does not address that factor here.

In support of their argument that Plaintiffs will be deprived of their day in court if this Court grants Defendants' motion, Plaintiffs offer only that "undersigned counsel has been quagmired in the N.D. Cal. Court system ... for six-plus years" in a different case, and during that time, the courts in the Northern District of California have "demonstrated ... Big Tech bias." Dkt. 49, at 21. Plaintiffs' unsubstantiated accusations of bias do not demonstrate that they will be "deprived of [their] day in court because of the grave inconvenience or unfairness of the selected forum." *Noble House*, 67 F.3d at 248.

Plaintiffs also fail to demonstrate that the FSCs would contravene a strong public policy of the forum state, Texas. Plaintiffs argue that Texas "has a compelling public interest in protecting its citizens ... from any erosion of constitutionally guaranteed rights" as a result of the California courts' alleged "Big Tech bias" and in "preventing non-Texans from circumventing its statutes." Dkt. 49, at 21. Plaintiffs imply that if this Court transfers this case to California, the allegedly-biased California courts will allow the "Big Tech" defendants to run roughshod over the Constitution and avoid liability under Texas law. As before, the undersigned declines to entertain Plaintiffs' unsupported allegations as to bias among courts in the Northern District of California. And as to Plaintiffs' argument that transfer would foreclose any of Plaintiffs' claims arising under Texas law, whether Texas statutory claims may be asserted in this case is unrelated to the forum analysis.

Plaintiffs add that Texas "has a substantial public interest in protecting its workforce and economy, not California (which favors its Silicon Valley Big Tech

14

workforce)." *Id.* at 22. The undersigned agrees with Defendants that these vague assertions establish no Texas policy sufficient to overcome the FSCs' enforceability. *See, e.g., Wolfe v. CareFirst of Maryland, Inc.*, No. 4:09-CV-492, 2010 WL 1998290, at *5 (E.D. Tex. Apr. 27, 2010), *report and recommendation adopted*, No. 4:09-CV-492, 2010 WL 1998222 (E.D. Tex. May 18, 2010) (finding plaintiff's vague assertions that "Texas has an interest in protecting the rights of its citizens" insufficient to "overcome the presumed enforceability of the forum selection clause"). Further, Texas public policy strongly favors freedom of contract, including the freedom to agree to an FSC. *White*, 490 S.W.3d at 471.

As to Plaintiff's argument that the TOS are "contracts of adhesion," courts "regularly uphold [FSCs] contained in contracts of adhesion that are not subject to negotiation—even when those clauses are enforced against relatively unsophisticated parties with little to no bargaining power." Dkt. 49, at 18-20; *Davis*, 2023 WL 4670491, at *14 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991)). In fact, Texas courts have routinely held FSCs appearing in TOS similar to the ones at issue in this case enforceable. *See, e.g., Wise Guys I v. Meta Platforms, Inc.*, No. 3:23-CV-0217-X, 2023 WL 8434452, at *2-3 (N.D. Tex. Dec. 4, 2023); *Moates*, 2021 WL 3013371, at *7. Additionally, Defendants are large companies contracting with individuals around the globe and thus need to limit the fora in which they will be subject to suit. As do most courts, this Court should hold the FSCs enforceable.

### D. No Extraordinary Circumstances Weigh Against Transfer

Having determined that the FSCs are mandatory and enforceable, this Court must give them controlling weight unless Plaintiffs demonstrate that extraordinary circumstances defeat transfer. *See Atl. Marine*, 571 U.S. at 62; *Weber*, 811 F.3d at 776. Whether extraordinary circumstances exist depends on public-interest factors including (1) "the administrative difficulties flowing from court congestion"; (2) "the local interest in having localized interests decided at home"; (3) "the familiarity of the forum with the law that will govern the case"; and (4) "the avoidance of unnecessary problems of conflict of laws." *Sobel*, 2023 WL 4356066, at *7 n.6; *see also Atl. Marine*, 571 U.S. at 62 n.6. Because these public-interest factors "will rarely defeat a transfer motion, the practical result is that [FSCs] should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64.

First, the court-congestion factor does not weigh against transfer. While since the parties' filings the Austin Division of the Western District of Texas has gained another active district judge, a comparison of the average cases per district judge between the Western District of Texas and the Northern District of California—based on the most recent available data—does not overwhelmingly disfavor transfer. *Compare DH Int'l Ltd. v. Apple Inc.*, 2024 WL 4119374, at *5 (W.D. Tex. Aug. 30, 2024) (Pitman, J.) ("[T]he undersigned has over 900 active civil cases and is the only active district judge in Austin."), *with* United States Courts, *Table N/A – U.S. District Courts – Federal Court Management Statistics – Profiles* (Sept. 30, 2024), https://www.uscourts.gov/sites/default/files/2024-12/fcms_na_distprofile0930.2024.p

16

df (597 average civil filings per judge); *Atl. Marine*, 571 U.S. at 67 (holding that a party acting in violation of an FSC bears the burden of showing that the public-interest factors "overwhelmingly disfavor" transfer). Given that this Court's workload is in flux, this factor is at least neutral.

The local-interest factor favors transfer. Aside from vague assertions that Texas "has a compelling public interest in protecting its citizens ... from any erosion of constitutionally guaranteed rights," Plaintiffs do not argue that this factor disfavors transfer. Dkt. 49, at 21. The undersigned agrees with Defendants that the local-interest factor favors the California forum because each of the Defendants is headquartered there. Dkts. 37-15, at 1; 38-1, at 1; 39-1, at 6; *see Moates v. Facebook, Inc.*, No. 4:21-cv-694-ALM-KPJ, 2022 WL 2707745, at *5 (E.D. Tex. June 13, 2022); *Moates*, 2021 WL 3013371, at *10; *see Zix Corp. v. Echoworx Corp.*, No. 2:15-cv-1272, 2016 WL 7042221, at *4 (E.D. Tex. June 9, 2016) (A "judicial district's local interest in a case is strong 'when the cause of action calls into question the work and reputation of several individuals residing in or near the district who presumably conduct business in that community.'" (quoting *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009))).

Third, there can be no doubt that the Northern District of California is familiar with the law at issue in this case. *See, e.g.*, *Rogalinski v. Meta Platforms, Inc.*, 2022 WL 3219368 (N.D. Cal. Aug. 9, 2022), *aff'd*, 2023 WL 7876519 (9th Cir. Nov. 16, 2023); *O'Handley v. Padilla*, 579 F. Supp. 3d 1163 (N.D. Cal. 2022), *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023); *Children's Health Def. v. Facebook Inc.*, 546

17

F. Supp. 3d 909 (N.D. Cal. 2021), *aff'd sub nom. Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742 (9th Cir. 2024). And regardless of which state's law applies in this case, courts in the Northern District of California are well-equipped to apply it. *See In re TikTok, Inc.*, 85 F.4th 352, 365 (5th Cir. 2023) ("We recognize that federal judges routinely apply the law of a state other than the one in which they sit and have hesitated to find that this factor weighs in favor of transfer when there are no exceptionally arcane features of Texas ... law that are likely to defy comprehension by a federal judge sitting in California.") (cleaned up). This factor does not overwhelmingly disfavor transfer. *Atl. Marine*, 571 U.S. at 67.

Finally, Plaintiffs identify no conflict-of-laws problems weighing against transfer here. *See* Dkt. 49. Neither does the undersigned, and this factor is neutral.

On balance, no extraordinary circumstances weigh against transfer in this case. *See Atl. Marine*, 571 U.S. at 62. The undersigned therefore concludes that the FSCs must be given controlling weight. *Id.* at 64. This case should be transferred to the United States District Court for the Northern District of California.[9]

## IV. RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **GRANT** Defendants Google, LLC, Meta Platforms, Inc., and X Corp.'s motions to transfer. Dkts. 37; 38; 39.

---

[9] Plaintiffs request that if this Court grants Defendants' motion, it should transfer the case to Judge William Alsup, a senior district judge in the Northern District of California. Dkt. 49, at 23 n.3. As this Court exercises no authority over the assignment of cases among judges in the Northern District of California, the undersigned recommends that the District Judge deny the request.

The referral to the Magistrate Judge should now be canceled.

## V. WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED February 24, 2025.

                                         DUSTIN M. HOWELL
                                         UNITED STATES MAGISTRATE JUDGE